HARTZMARK & CO., INC., *v.* WEISS.

(No. 68-12731—Decided March 18, 1969.)

Shaker Heights Municipal Court.

*Messrs. Hahn, Loeser, Freedheim, Dean & Wellman* and *Mr. Neil K. Evans*, for plaintiff.
*Mr. Sanford I. Atkin*, for defendant.

ROCKER, J. Plaintiff prior to and during the year of 1967 acted as the broker for defendant in various transactions involving the purchase and sale of securities. Among such sales made by plaintiff at the instance and request of defendant, it is alleged, were certain stock certificates of Zurn Industries Inc., sold on February 27, 1967. On July 28, 1967, stockholders of record as of that date were entitled to a "two for one" stock split. It is alleged by plaintiff that Zurn Industries, Inc., erroneously mailed the said stock split distribution to the defendant who has refused demands of plaintiff to surrender same.

Plaintiff's petition further alleges that: "* * * defendant has * * * wrongfully withhheld said stock certificate number 2641 and all dividends accrued thereon from plaintiff and has wrongfully converted the same to his own use."

Defendant's answer makes specific denials of the salient allegations of the petition qualified with the phrase "* * * for want of knowledge."

Following said answer and attached to same is defendant's cross-petition alleging in substance that "plaintiff herein maliciously and without probable cause swore to a petition and affidavit charging the defendant with conversion of certain personal property." It further alleges "* * * that the purpose of plaintiff's petition and affidavit in making such false and malicious charges against said defendant and in continuing to prosecute such civil action was to procure a settlement of a civil controversy."

Cross-petitioner then alleges that he was required to expend the sum of two thousand dollars as attorney's fees, he suffered humiliation. nervous shock, loss of sleep, mental anguish, etc., all to his damage in the amount of $750,000.00, for which sum judgment is prayed.

Plaintiff's prayer was in the sum of $5,000.00 or such larger sum as the shares in question may attain in value at time of judgment and punitive damages, including attorney's fees.

Plaintiff's prayer is well within the monetary jurisdiction of this court as set forth in Section 1901.17, Revised

Code, being not in excess of $10,000.00. Defendant's cross-petition prays for an amount clearly beyond this court's jurisdiction and therefore brings into consideration this court's obligation under Section 1901.22 (E), Revised Code, which reads as follows:

"In any action in a Municipal Court in which the amount claimed by any defendant in any statement of counterclaim exceeds the jurisdictional amount, the judge shall certify the proceedings in the case to the Court of Common Pleas, except in the Cleveland Municipal Court."

Plaintiff urges the court in a motion to strike defendant's cross-petition on the ground that it is a frivolous and sham pleading. Defendant's brief in opposition relies on the aforementioned statute, taking the position that this court is powerless to examine the cross-petition for any purpose other than to determine that its prayer exceeds the jurisdiction of this court. This court does not agree with that position.

This court is fully cognizant of the fact that our municipal courts are a creature of the Legislature, authorized to create such courts by virtue of the Constitution of the state of Ohio. It acknowledges the fact that the Legislature has the right to specify the powers, jurisdiction, compensation, and procedures of the Municipal Courts, as well as other courts of the state, and it has done so.

The Legislature, however, has not seen fit to circumscribe various inherent powers vested in any judge, from the mayor's courts up to the Supreme Court of the State.

Referring, for example, to Section 1901.22 (E), Revised Code, as well as in Section 2309.16, Revised Code, the Legislature does not undertake a minute description or definition of a "counterclaim" in such terms as to avoid judicial interpretation. The very absence of such a definition indicates to this court that it was the intention of the Legislature to leave this determination to the judiciary.

Throughout Chapter 2309, Revised Code, instance after instance will be found in which the Legislature has avoided impinging its will upon the judicial powers of the courts. The Legislature's description of a petition is an obvious

example of its intent, it reads in part: " \* \* \* The first pleading shall be the petition by the plaintiff, which must contain: (A) A statement of facts constituting a cause of action in ordinary and concise language."

The later sections of the code on pleadings referring to answers, demurrers, motions, joinder of actions and parties—each of these requiring judicial inquiry in their use clearly establish the separate powers of the Legislature and the judiciary that are vital cornerstones of our form of government.

We turn to the Legislature's broad definition of "counterclaim" found in Section 2309.16, Revised Code.

"A counterclaim is *a cause of action* existing in favor of one or more defendants against one or more plaintiffs or one or more defendants, or both, between whom a several judgment might be had in the action, and arising out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim. \* \* \*" (Emphasis added.)

It should be noted that "a cause of action" is a necessary ingredient of a counterclaim and just as the Legislature leaves to the judiciary the power to determine the validity of a cause of action in a petition, it likewise does so with regard to a counterclaim.

Ohio Jurisprudence 2d cogently describes the essentials of a cross-petition or counterclaim:

"\* \* \* A counterclaim stands on the same footing, and is to be tested by the same rules, as if it were asserted in an independent action; it is not simply new matter operative by way of defense, but must contain facts recognized by courts of law or equity as constituting an existing cause of action which would have entitled the defendant asserting it to a judgment in a separate action." 14 Ohio Jurisprudence 2d No. 17.

Does the counterclaim in the instant case constitute at law "a cause of action?"

Early in the history of the courts of this state the following principle was established with respect to actions for malicious prosecution: "In an action for malicious

prosecution, it is well settled that the prosecution of *the original criminal or civil proceedings complained of must be shown to be at an end* at the time the petition in the action for malicious prosecution is filed. *Fortman* v. *Rottier*, 8 Ohio St. 548, 35 Ohio Jurisprudence 2d Section 15. (Emphasis added.)

That statement of law is so clear, concise and elementary that it is unnecessary to labor the point further.

Defendant in the subject suit cannot set forth a cause of action until the termination of this suit and then only if that termination is favorable to the defendant.

This court may never be faced, nor may any other court, with deciding whether plaintiff has in fact been guilty of malicious prosecution or abuse of process. Such a question can arise only if defendant is successful in the present suit and then elects to bring the action which he couches now in the form of a counterclaim. Certainly, however, this court's disposition of the counterclaim does not prejudice the right of the defendant to bring suit at such later date; he is denied no substantive right.

This court finds, therefore, that defendant's counterclaim is prematurely brought; that it does not in law plead facts constituting a counterclaim; that it is a sham pleading introduced for the purpose solely of delay in the administration of justice.

Plaintiff's motion to strike defendant's cross-petition is granted.